

# NUMBER 13-11-00075-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

GILBERTO RINCONES,                                        Appellant,

v.

WHM CUSTOM SERVICES, INC.,
ET AL.,                                                              Appellees.

---

## On appeal from the 445th District Court
## of Cameron County, Texas.

---

## OPINION ON REHEARING

### Before Chief Justice Valdez and Justices Garza and Vela[1]
### Opinion on Rehearing by Chief Justice Valdez[2]

---

[1] The Honorable Rose Vela, former Justice of this Court, did not participate in deciding this case because her term of office expired on December 31, 2012. Accordingly, she does not participate in this opinion on rehearing.

[2] This cause is before the Court on Gilberto Rincones's motion for rehearing. *See* TEX. R. APP. P. 49.1. The Court, having fully considered the motion and responses thereto, is of the opinion that the motion should be and hereby is granted. *See* TEX. R. APP. P. 49.1–.3. The Court withdraws the prior memorandum opinion and judgment issued on original submission of this cause. On rehearing, without rebriefing or oral argument, the Court issues this opinion and judgment. *See* TEX. R. APP. P. 47.1 & 49.3. The motions for rehearing filed by WHM, Exxon, and DISA are hereby denied. Rincones's motion to inspect sealed records is dismissed as moot.

Plaintiff Gilberto Rincones appeals a take-nothing judgment entered in favor of defendants WHM Custom Services, Inc., Exxon Mobil Corporation, and DISA, Inc. As set forth below, the Court reverses the take-nothing judgment and remands in part, and affirms in part.

## I. BACKGROUND

Gilberto Rincones is a Hispanic male of Mexican descent and heritage. Between 2007 and 2008, he worked as a technician for WHM, a specialty maintenance company that builds, removes, repairs, and installs catalyst systems. At the time, WHM had a non-exclusive independent contractor service agreement with Exxon, which own and operates refineries and chemical plants. Most of WHM's catalyst work was performed at various Exxon facilities. WHM staffs each project according to the particular demands of the project.

Under the terms of its contract with Exxon, WHM is required to ensure that all of its employees who enter Exxon facilities conduct themselves in a safe manner and be subject to random drug screens. Exxon uses Substance Abuse Alliance Groups, or third party administrators, to monitor and track substance abuse testing. These groups attempt to standardize testing requirements and form databases of individual employee testing results to avoid unnecessary or redundant testing obligations and promote consistent standards. As required by Exxon, WHM contracted with DISA, a third party substance abuse administrator approved by Exxon, to assist WHM in its program. Before being eligible to work at an Exxon facility, all WHM employees are required to have an "active" DISA status.

2

Rincones had an "active" DISA status when he began working for WHM at Exxon's Baytown, Texas facility. Subsequently, however, his DISA status was changed to "inactive" after he submitted a urine sample for drug testing at DISA's request. According to DISA, the sample was positive for marijuana use. Rincones denied using marijuana and insisted that the sample must have been mixed with someone else's or was otherwise contaminated. Rincones tried to submit a new sample for testing, but DISA refused. WHM was no help to him either. WHM told him that because of his "inactive" status with DISA, he was no longer eligible to work for WHM at Exxon's Baytown, Texas facility. WHM told Rincones to work it out with DISA. According to Rincones, neither WHM nor DISA disclosed to him that they had a return to work policy and procedure for employees who test positive for drug or alcohol use.

A few days later, Rincones went to a different laboratory where he was tested for drug and alcohol use. The results were negative. Rincones contacted WHM in an effort to prove his innocence; however, WHM refused to consider the second test and insisted that Rincones work it out with DISA. According to Rincones, DISA would not return his calls. His DISA status remained "inactive." Nevertheless, WHM did not consider Rincones fired. Later that year, after Rincones submitted a claim for unemployment benefits, WHM informed the Texas Workforce Commission that Rincones had been fired for violating the company's substance abuse policy, as evidenced by his "drug-test results."

Rincones filed a charge of discrimination and was issued a right to sue letter. He proceeded to file suit against WHM, Exxon, DISA, and other defendants who are not parties to this appeal. The trial court granted summary judgment in favor of the

3

defendants on all claims, except Rincones's claim for pattern or practice discrimination, which it dismissed for lack of jurisdiction. Rincones non-suited all claims that had not been dismissed by the trial court. He now appeals to this Court.

## II. CLAIMS AGAINST WHM

Rincones asserted claims against WHM for discrimination based on race or national origin, retaliation, pattern or practice discrimination, defamation, and compelled self-defamation. On appeal, Rincones argues that the trial court erred in dismissing these claims.[3]

## A. Discrimination Based on Race or National Origin

In his first issue, Rincones argues that the trial court erred by granting WHM's motion for summary judgment on his claim for discrimination based on race or national origin.

## 1. Applicable Law

The Texas Commission on Human Rights Act ("TCHRA") was "enacted to address the specific evil of discrimination and retaliation in the workplace." *City of Waco v. Lopez*, 259 S.W.3d 147, 153 (Tex. 2008); *see also* TEX. LABOR CODE ANN. §§ 21.001–.566 (West, Westlaw through 2013 3d C.S.). The TCHRA's "general purposes" include executing "the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments" and securing "for persons in this state, including persons with disabilities, freedom from discrimination in certain employment transactions, in order to protect their personal dignity." TEX. LABOR CODE ANN. § 21.001(1) & (4). The TCHRA is intended to "make available to the state the full productive capabilities of persons in this state," to "avoid

---

[3] Rincones also asserted a negligence claim against WHM. The trial court granted summary judgment for WHM on the negligence claim. Rincones has not challenged that ruling in this appeal.

4

domestic strife and unrest," and to "preserve the public safety, health, and general welfare." *Id.* § 21.001(5)–(7).

Under the TCHRA, "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment . . . ." *Id.* § 21.051(1).[4] "[A]n unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice . . . ." *Id.* § 21.125(a). The Texas Supreme Court has explained "that 'a motivating factor' is the correct standard for the plaintiff in all TCHRA unlawful employment practice claims . . . ." *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). This language states exactly "what a complainant must show in order to prevail in a lawsuit." *Id.*[5]

"Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). The first method "involves proving discriminatory intent via direct evidence of what the defendant did and said." *Id.*

---

[4] The Texas Supreme Court has noted that the TCHRA "is effectively identical to Title VII, its federal equivalent, except that Title VII does not protect against age and disability discrimination." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633 (Tex. 2012). In fact, one of the stated "general purposes" of the TCHRA is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments." TEX. LABOR CODE ANN. § 21.001(3) (West, Westlaw through 2013 3d C.S.).

[5] Under the TCHRA, if "a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor," then the trial court "may not award damages or issue an order requiring an admission, reinstatement, hiring, promotion, or back pay." TEX. LABOR CODE ANN. § 21.125(b) (West, Westlaw through 2013 3d C.S.). In such cases, "the court may [only] grant declaratory relief, injunctive relief . . . , and [award] attorney's fees and costs . . . ." *Id.*

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "[M]otives are often more covert than overt, making direct evidence of forbidden animus hard to come by." *Garcia*, 372 S.W.3d at 634. "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). This limitation is not unique to discrimination cases—"[t]he law often obliges finders of fact to inquire into a person's state of mind." *Id.* Discrimination is not treated "differently than other ultimate questions of fact." *Id.*

Accordingly, the second method allows a plaintiff to prove discriminatory intent using circumstantial evidence. *See El Paso Cmty. College v. Lawler*, 349 S.W.3d 81, 86 (Tex. App.—El Paso 2010, pet. denied). This often involves "the burden-shifting mechanism of *McDonnell Douglas*." *Garcia*, 372 S.W.3d at 634 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the plaintiff has his day in court despite the unavailability of direct evidence." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (quotations omitted). "Under this framework, the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima facie case of discrimination." *Garcia*, 372 S.W.3d at 634.[6] "Although the precise elements of this showing will vary depending on the circumstances, the

---

[6] "There is no prima facie case requirement in the text of the TCHRA; the statute simply proscribes discrimination 'because of race, color, disability, religion, sex, national origin, or age.'" *Garcia*, 372 S.W.3d at 638 (quoting TEX. LABOR CODE ANN. § 21.051). "The mechanics of the prima facie case—and its significance in discrimination cases—are products of caselaw, specifically of the burden-shifting framework created by the U.S. Supreme Court in *McDonnell Douglas* and consistently applied to TCHRA cases by . . . [the Texas Supreme Court]." *Id.* (footnote omitted).

6

plaintiff's burden at this stage of the case is not onerous." *Id.* (quotations omitted). The elements of a prima facie case of discrimination are not fixed,[7] but they are often enumerated as follows:

> To establish a prima facie case of employment discrimination the plaintiff must show (1) he was a member of a protected class, (2) he was qualified for his employment position, (3) he was subject to an adverse employment decision, and (4) he was replaced by someone outside of the protected class, or he was treated less favorably than similarly situated members of the opposite class (disparate treatment cases).

*Michael v. City of Dallas*, 314 S.W.3d 687, 690–91 (Tex. App.—Dallas 2010, no pet.).

"The *McDonnell Douglas* presumption is merely an evidence-producing mechanism that can aid the plaintiff in his ultimate task of proving illegal discrimination by a preponderance of the evidence." *Garcia*, 372 S.W.3d at 634 (quotations omitted). "The prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.* (quotations omitted). "Ultimately, if the defendant fails to articulate some legitimate, nondiscriminatory reason for the employment decision, that presumption will be sufficient to support a finding of liability." *Id.* (quotations omitted).

Thus, if the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "This burden is one of production, not persuasion; it

---

[7] "[T]he Supreme Court in *McDonnell Douglas* did not establish an immutable list of elements, noting instead that the facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required is not necessarily applicable in every respect to differing factual situations." *Garcia*, 372 S.W.3d at 638 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973)) (quotations omitted). "Accordingly, lower courts have been left to grapple with the specifics of how the test should be applied to particular types of claims." *Id.*

can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quotations omitted). If the defendant meets its burden, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [i]s discrimination *vel non*." *Id.* at 142–43 (quotations & citations omitted).

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Id.* at 153. Furthermore, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. In attempting to satisfy this burden, "the plaintiff—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (citation & quotations omitted). "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quotations omitted). Moreover, "although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual." *Id.* (citation & quotations omitted).

"The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived,

does not necessarily establish that the plaintiff's proffered reason is correct." *Id.* at 146–47 (quotations omitted).  In other words, "it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (quotations omitted).  However, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.*  "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Id.*

As the U.S. Supreme Court has explained:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.

*Id.* (quotations omitted).  "Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.*  "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148.[8]

**2. Standard of Review**

---

[8] "This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).  "Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*

9

The purpose of a summary judgment is to "provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact." *Gaines v. Hamman*, 358 S.W.2d 557, 563 (Tex. 1962). We review summary judgments de novo. *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2002, no pet.).

In a traditional motion for summary judgment, the movant has the burden of showing both that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.). In deciding whether there is a genuine issue of material fact, evidence favorable to the non-movant is taken as true, and all reasonable inferences are made, and all doubts are resolved, in favor of the non-movant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005) (holding that reviewing court must view the record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion").

Summary judgment is proper if the movant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Grinnell*, 951 S.W.2d at 425. The non-movant has no burden to respond to a traditional summary judgment motion unless the movant conclusively establishes its cause of action or defense. *Swilley*, 488 S.W.2d at 68. Furthermore, summary judgment "may only be granted upon grounds expressly asserted in the summary judgment motion." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011).

10

"Once the defendant produces sufficient evidence to establish the right to summary judgment, the plaintiff must present evidence sufficient to raise a fact issue." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). "Both direct and circumstantial evidence may be used to establish any material fact." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). "To raise a genuine issue of material fact, however, the evidence must transcend mere suspicion." *Id.* "Evidence that is so slight as to make any inference a guess is in legal effect no evidence." *Id.*

"By its very nature, circumstantial evidence often involves linking what may be apparently insignificant and unrelated events to establish a pattern." *Ford Motor Co. v. Castillo*, No. 13-0158, 2014 WL 4933008, at *5 (Tex. Oct. 3, 2014) (op. on reh'g) (per curiam) (quoting *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993)). "We must . . . view each piece of circumstantial evidence, not in isolation, but in light of all the known circumstances." *Lozano v. Lozano*, 52 S.W.3d 141, 167 (Tex. 2001). In cases involving nefarious conduct, such as discrimination or fraud, "'it is not often that any kind of evidence but circumstantial evidence can be procured.'" *Castillo*, 2014 WL 4933008, at *5 (quoting *Thompson v. Shannon*, 9 Tex. 536, 538 (1853)). In such cases, circumstantial evidence of a "pattern" may be sufficient. *See id.*

The alternative to a traditional motion for summary judgment is a no evidence motion for summary judgment. *See* TEX. R. CIV. P. 166a(c) & (i). "A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). A no evidence point will be sustained when (a) there is a complete absence

11

of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 751. "Thus, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Id.* "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quotations omitted).

When a party moves for summary judgment on both traditional and no evidence grounds, the Court will typically begin its analysis by reviewing the trial court's ruling under the no evidence standard of review. *See Ridgway*, 135 S.W.3d at 600 ("We first review the trial court's summary judgment under the standards of Rule 166a(i).") (citing TEX. R. CIV. P. 166a(i)). This is particularly true when, as in this case, the trial court's order does not specify the basis for its ruling. *Id.* ("The trial court granted summary judgment without specifying on which provision it relied."). "We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

**3. Discussion**

In his live petition, Rincones alleges that his employer, WHM, discriminated against him based on his race or national origin. He alleges the following: (1) as a Hispanic individual of Mexican descent and heritage,[9] he is a member of a protected class for

---

[9] *See* TEX. LABOR CODE ANN. § 21.110 (West, Westlaw 2013 3d C.S.) ("A provision in this chapter referring to discrimination because of national origin or on the basis of national origin includes discrimination because of or on the basis of the national origin of an ancestor.").

purposes of the TCHRA; (2) he was qualified for the employment position he held with WHM as a technician; (3) he was subject to an adverse employment action by WHM after DISA reported to WHM that the results of his random drug test were positive for marijuana because WHM allowed DISA to change his status from "active" to "inactive" without following WHM's policies and procedures regarding positive drug tests, which include disclosing to the employee and assisting the employee with the remedial steps required to regain an "active" status with DISA and return to work for WHM; and (4) WHM treated Rincones less favorably than non-Hispanic employees, not of Mexican descent or heritage, who were in similar circumstances (i.e., because WHM ensured that DISA followed its policies and procedures with respect to those employees), and those employees were able to regain an "active" DISA status and were allowed to return to work for WHM after testing positive for drug or alcohol use.

In its motion for summary judgment, WHM argued that it was entitled to judgment as a matter of law because there was no genuine issue of material fact regarding Rincones's lack of qualification. *See* TEX. R. CIV. P. 166a(c). According to WHM, the summary judgment evidence established that Rincones had received an "inactive" status with DISA and was therefore ineligible to work for WHM at Exxon's Baytown, Texas facility. Based on the foregoing, WHM argued that, as a matter of law, Rincones was not qualified for the position of technician and therefore could not establish a prima facie case of discrimination based on race or national origin.

In his response, Rincones argued that there was a genuine issue of material fact regarding his qualification. Rincones does not dispute that an "active" DISA status is required to work for WHM at Exxon's Baytown, Texas facility. He acknowledges and

13

agrees that his DISA status was "inactive."  However, he maintains that his "inactive" status was caused by the results of a drug test DISA selected him to take, which showed he had used marijuana, when in truth he had not.  Rincones denies using marijuana and maintains that the results of the test were a false positive caused by DISA and the testing company, both of which failed to properly administer the drug test, and by WHM, which according to Rincones, failed to ensure that DISA and the testing company followed the correct policies and procedures for testing and returning to work.  Rincones believes his urine sample was switched with someone else's sample.  After learning that he failed the drug test, Rincones demanded to be retested; however, DISA and the testing company would not agree to test a new sample.  They offered to retest the original sample, which Rincones maintained was not his.  At this point in time, Rincones's DISA status was changed to "inactive," and according to WHM, Rincones could no longer work for WHM at Exxon's Baytown, Texas facility.  His DISA status never returned to "active."

The question presented to the Court is whether, based on this record, there is a genuine issue of material fact regarding the element of qualification.  WHM asserts that an "inactive" DISA status disqualifies Rincones as a matter of law.  And there is no dispute that Rincones had an "inactive" DISA status.  However, the Court is wary of taking WHM's suggested approach.  To illustrate our concerns, we shall assume, for argument's sake, that Rincones's DISA status is conclusive.  If so, he could not establish a prima facie case of discrimination because the qualification element is negated by his "inactive" status. This would be true even if the "inactive" status was the result of mistake, human error, or even, discrimination, as Rincones alleges in this case.  Rincones alleges that his "inactive" status could have been restored to "active" if WHM had required DISA to follow

14

its policies and procedures for a positive drug test, which it refused to do because it was intentionally discriminating against him for being Hispanic and of Mexican heritage. We agree that the status factor is not the same as the qualification requirement and that proof or absence of one does not necessarily establish or negate the other. Furthermore, the *McDonnell Douglas* burden-shifting analytical framework requires Rincones to prove that he was qualified for the position, not that he had an "active" DISA status. *See McDonnell Douglas*, 411 U.S. at 802–05. Accordingly, since Rincones's "inactive" DISA status was the sole ground WHM asserted to negate Rincones's qualification, the Court concludes that the trial court could not properly grant summary judgment on this basis.

WHM also moved for summary judgment on the element of disparate treatment, arguing that Rincones could not produce any evidence that he was treated less favorably than similarly situated individuals who were not in his protected class. *See* TEX. R. CIV. P. 166a(i). In response, Rincones produced summary judgment evidence that under WHM's substance abuse policy, an employee who tests positive for drug or alcohol use may regain "active" DISA status and return to work for WHM by undergoing rehabilitation and meeting other requirements. Under its contractual arrangement with Exxon and DISA, WHM relies on DISA and DISA's medical review officer or "MRO" to explain the return to work policy and procedure to the affected employee. However, in certain instances, the human resources director for WHM has met personally with the affected employee to explain the company policy and procedure. In one instance, after a "white" employee tested positive, WHM's human resources director explained the company policy to the employee and informed him that he could return to work by meeting the

15

return to work requirements and regaining an "active" DISA status. The employee returned to work for WHM within two weeks.

In contrast, in Rincones's case, the return to work policy and procedure were not explained to Rincones by DISA or WHM or followed by either company. When Rincones contacted WHM's human resources director, he was merely directed back to DISA and its MRO, who according to Rincones, told him, "What's done is done. You can't [fix it]." The return to work policy and procedure were not explained to Rincones or followed in his case. Unlike with the white employee, WHM's human resources director did not inform Rincones that he could return to work by meeting certain requirements. That option was made available to the white employee, but it was not made available to the Hispanic employee.

Based on the summary judgment evidence, reasonable people could reach different conclusions about whether WHM treated similarly situated non-Hispanic employees more favorably than Rincones with respect to the return to work policy and procedure. *See Chapman*, 118 S.W.3d at 751. Accordingly, Rincones met the "minimal" burden with respect to the element of disparate treatment for his prima facie case of discrimination based on race or national origin. *Garcia*, 372 S.W.3d at 634. Therefore, we conclude that summary judgment could not be properly granted on this basis.

Finally, WHM also moved for summary judgment on the ground that Rincones could not establish that its legitimate, non-discriminatory reason for its action against him was a pretext for unlawful discrimination based on race or national origin. WHM argued that it requires that all persons who work on Exxon facilities have an "active" DISA status regardless of race or national origin. However, Rincones produced summary judgment

16

evidence showing disparate treatment with respect to WHM's return to work policy and procedure. WHM did not produce any evidence of a legitimate, non-discriminatory reason for why the return to work policy and procedure were followed for a white employee but not followed for a Hispanic employee. Therefore, the burden did not shift to Rincones to produce evidence of pretext. Accordingly, summary judgment could not be properly granted on this basis.

In sum, the trial court erred in granting summary judgment to WHM on Rincones's claim for discrimination based on race or national origin. Therefore, the Court sustains Rincones's first issue.

## B. Retaliation

In his second issue, Rincones argues that the trial court erred in granting summary judgment for WHM on his claim for retaliation.

## 1. Applicable Law

The TCHRA provides in relevant part as follows:

An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:

(1) opposes a discriminatory practice;

(2) makes or files a charge;

(3) files a complaint; or

(4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

TEX. LABOR CODE ANN. § 21.055.

"To establish a prima facie case of retaliation a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there

17

was a causal connection between participation in the protected activity and the adverse employment decision." *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 295 (Tex. App.—Corpus Christi 2000, pet. denied). "[A]ctionable retaliation exists when an employer makes an adverse employment decision against an employee . . . ." *Lopez*, 259 S.W.3d at 152. To prove that a challenged action constitutes an adverse employment action, the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning that it could well have dissuaded a reasonable employee from making or supporting a charge of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

**2. Discussion**

In his live petition, Rincones alleges that he complained that non-Hispanic employees of WHM were allowed to retest as a result of a false positive result and allowed to return to work. According to Rincones's petition, WHM refused to give him this option and instead subjected him to retaliatory treatment and a hostile work environment, which ultimately led to his wrongful discharge. Rincones alleges that he was wrongfully and illegally retaliated against following his opposition and complaint of discrimination.

WHM moved for summary judgment on the ground that Rincones never complained to WHM that non-Hispanics were being treated differently. *See* Tex. R. Civ. P. 166a(c). According to WHM, Rincones never complained about or opposed any discriminatory practice. In response, Rincones asserted that he complained that non-Hispanic employees who failed drug and alcohol tests were allowed to continue working for WHM. As evidence to support this contention, Rincones offered his deposition testimony. Rincones testified that he contacted WHM's human resources director to

18

inform him that he had passed a second drug test from a different laboratory. The test was negative for drug or alcohol use. Nevertheless, Rincones was not allowed to return to work. According to Rincones's testimony, during this conversation, he complained to the director that other employees had failed drug and alcohol tests and were allowed to return to work. He asked why he was being treated differently. Rincones also testified that he complained to two superintendents that other employees had failed drug and alcohol tests and were allowed to return to work, but he was not. Thereafter, in September 2008, WHM reported to the Texas Workforce Commission that it fired Rincones for violating the company's drug and alcohol policy, as evidenced by his test results.

WHM contends that Rincones's complaints were not protected activity because he failed to expressly state that he was being treated differently than other employees based on his race or national origin. However, Rincones communicated to WHM that he believed he was being treated differently and less favorably than other employees, who WHM knew were non-Hispanic employees, not of Mexican descent or heritage. *See Castillo*, 2014 WL 4933008, at *5 (drawing inferences from all the known circumstances connecting "apparently insignificant and unrelated" factors). Although Rincones may not have used the magic words "race or national origin" when making his complaint, that does not necessarily mean that the activity he engaged in was not protected. The Texas Supreme Court has described the TCHRA's "catch-all retaliation language" as covering "a wide array of situations in which discrimination may have been alleged by the employee or someone else." *Lopez*, 259 S.W.3d at 151. An aggrieved employee does not have to

19

expressly invoke the TCHRA or its procedures as a predicate to pursuing a retaliation claim. *Id.*

As noted above, we view the evidence as a whole, not in a vacuum. *See Lozano*, 52 S.W.3d at 167. Particularly with circumstantial evidence, we must take into consideration the entirety of the situation and all the known circumstances. *See id.* Furthermore, in the context of summary judgment, we must draw all reasonable inferences in favor of Rincones because he is the non-movant. *Am. Tobacco Co.*, 951 S.W.2d at 425.

In this instance, the summary judgment record supports a finding that WHM knew that Rincones was Hispanic and of Mexican descent and heritage and that the other employees who were allegedly treated more favorably and allowed to return to work after failing drug and alcohol tests were not in the same protected class as Rincones. In fact, in his deposition testimony, which was filed late but with express leave of court, WHM's human resources director testified that he knew the other employees were non-Hispanic. Thus, the circumstances indicate that when Rincones complained that he was being treated less favorably than the other non-Hispanic employees, WHM knew his complaint concerned discrimination based on race or national origin. The summary judgment evidence was sufficient to raise a fact issue about whether Rincones opposed an unlawful employment practice by expressing his belief that he was being treated differently and less favorably than other employees who were not Hispanic and not of Mexican heritage or descent. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) ("When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication

20

virtually always constitutes the employee's opposition to the activity.") (quotations omitted).

Again, at this stage of the proceedings, Rincones's burden is "minimal" and "not onerous." *Garcia*, 372 S.W.3d at 634. Furthermore, the fact that he opposed a discriminatory practice, like any other fact, can be established by circumstantial evidence, which is just as probative as direct evidence. *Ford Motor Co.*, 135 S.W.3d at 601. Viewing the record in the light most favorable to the non-movant, we conclude that Rincones raised a fact issue about whether he engaged in a protected activity by opposing a discriminatory practice. *See City of Keller*, 168 S.W.3d at 824. Specifically, Rincones's evidence raised a fact issue about whether he opposed WHM's discriminatory practice, as he perceived it, of allowing non-Hispanic employees to return to work after failing a drug and alcohol test and denying that benefit to him because he is Hispanic and of Mexican descent and heritage. *See* Tex. Labor Code Ann. § 21.055(1). Therefore, summary judgment could not be properly granted on the ground that Rincones did not engage in a protected activity.

WHM also sought summary judgment on the ground that Rincones could produce no evidence that it took any adverse action against him that can support a claim for retaliation. *See* Tex. R. Civ. P. 166a(i). According to WHM, by the time Rincones allegedly complained that non-Hispanic employees were being treated differently, his DISA status had already been changed to "inactive" and thus, he was ineligible for assignment to work for WHM at Exxon's Baytown, Texas facility. WHM argued that Rincones could not produce any evidence of an adverse action taken against him.

21

However, in response, Rincones pointed out that he was officially terminated by WHM in September 2008, several months after he complained about the disparate treatment. Furthermore, the summary judgment evidence shows that until that point, Rincones's employment with WHM had not been terminated and that the official policy of WHM was to allow an employee who tested positive for drug or alcohol use to take certain steps to regain an "active" DISA status and return to work. By terminating Rincones's employment, WHM eliminated that possibility. Thus, Rincones produced evidence of two distinct adverse actions that occurred after he engaged in protected activity by complaining about discrimination in the form of disparate treatment. First, he was denied the opportunity to regain "active" status with DISA through WHM's return to work policy and procedure, which were not followed in his case. Second, WHM officially terminated his employment. Therefore, summary judgment could not be properly granted on this basis.

Finally, WHM also sought summary judgment on the basis that Rincones could not produce any evidence that its actions were a pretext for unlawful retaliation. *See* TEX. R. CIV. P. 166a(i). In this context, our inquiry is not whether a positive drug test is a legitimate, non-discriminatory reason for the adverse action taken against Rincones. Rather, we must decide whether Rincones raised a fact issue about whether WHM and DISA actually followed their drug and alcohol policy by affording him an opportunity to regain his "active" DISA status after his positive test. The summary judgment evidence shows that other employees were able to do so, and the evidence also showed that those employees were non-Hispanic employees, not of Mexican descent or heritage. In contrast, Rincones was summarily dismissed, told to work it out with DISA, and not

informed of the return to work policy and procedure that WHM had adopted pursuant to its contract with Exxon, the implementation and enforcement of which it had contractually delegated to DISA. The evidence showed that the policy and procedure were followed in the case of the other employees who were not in the same protected class as Rincones. Those employees were allowed to regain "active" DISA status and to return to work for WHM after testing positive for drug or alcohol use. In contrast, Rincones was not informed of the return to work policy or procedure. We conclude that the foregoing raises a genuine issue of material fact on the element of pretext. Thus, summary judgment could not be properly granted on this basis.

The Court sustains Rincones's second issue.

## C. Pattern or Practice Discrimination

In his third issue, Rincones contends that the trial court erred in dismissing his claim for pattern or practice discrimination for want of jurisdiction.

## 1. Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks to defeat a cause of action by questioning the trial court's subject matter jurisdiction and should be decided "without delving into the merits of the case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject matter jurisdiction is at the heart of a court's power to decide a case. *See id.* "We review a trial court's order granting or denying a plea to the jurisdiction de novo." *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007). In our review, we examine the plaintiff's petition and evidence submitted by the parties "to the extent it is relevant to the jurisdictional issue." *Id.*

23

When a trial court's decision concerning a plea to the jurisdiction is based on the plaintiff's pleadings, we accept as true all factual allegations in the pleadings to determine if the plaintiff has met its burden to plead facts sufficient to confer jurisdiction on the court. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). We examine the pleader's intent and construe the pleadings in the plaintiff's favor. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam). A plea to the jurisdiction may be granted without allowing the plaintiff to amend if the pleadings affirmatively negate the existence of jurisdiction. *Brown*, 80 S.W.3d at 555; *Ramirez*, 74 S.W.3d at 867.

**2. Applicable Law**

The TCHRA "is modeled after federal law with the purpose of executing the policies set forth in Title VII of the federal Civil Rights Act of 1964." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (citing *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 131 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). The TCHRA requires a complainant to first exhaust his administrative remedies before filing a civil action. *Lueck v. State*, 325 S.W.3d 752, 761 (Tex. App.—Austin 2010, pet. denied). Failure to exhaust administrative remedies creates a jurisdictional bar to suit. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex. 1991). A subsequent suit "is limited to the complaints made in the discrimination charge and factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charge." *Johnson v. Hoechst Celanese Corp.*, 127 S.W.3d 875, 878 (Tex. App.—Corpus Christi 2004, no pet.).

24

**3. Discussion**

WHM sought dismissal of Rincones's pattern or practice claim of discrimination based on the fact that Rincones, in the charge he filed with the Texas Workforce Commission-Civil Rights Division and EEOC, did not allege facts relating to a pattern or practice of discrimination.  As set forth above, a lawsuit under the TCHRA "is limited to the complaints made in the discrimination charge and factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charge." *Id.* In this case, we conclude that Rincones's claim for pattern or practice discrimination is factually related to his claim for discrimination based on race and national origin.  In his charge, Rincones alleged that non-Hispanic employees were being treated differently. This allegation suggests a group-wide discriminatory pattern or practice in which non-Hispanic employees were treated more favorably than Hispanic employees.  *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S.324, 336 (1977) (stating that the claimant in a pattern or practice discrimination case has the burden "to establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure the regular rather than the unusual practice").  Therefore, we conclude that the trial court has jurisdiction over Rincones's pattern or practice discrimination claim because it is a "factually related claim[] that could reasonably be expected to grow out of the Commission's investigation of the charge." *Johnson*, 127 S.W.3d at 878.  The Court sustains Rincones's third issue.

**D. Defamation**

In his fourth issue, Rincones contends that the trial court erred in granting summary judgment for WHM on his claim for defamation based on what he maintains was a false positive drug test.

**1. Applicable Law**

A defamation claim of a private plaintiff against a non-media defendant consists of five elements: (1) the defendant published a factual statement about the plaintiff; (2) the statement was defamatory; (3) the statement was false; (4) the defendant acted with negligence concerning the truth of the statement; and (5) the plaintiff suffered injury. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *French v. French*, 385 S.W.3d 61, 72 (Tex. App.—Waco 2012, pet. denied). "A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.). "A statement that falsely charges a person with the commission of a crime is defamatory per se." *French*, 385 S.W.3d at 72.

"[A]n employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing." *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). "The privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate." *Id.* "Proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege." *Id.* "In the defamation context, a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its

truth." *Id.* "To invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice." *Id.*

**2. Discussion**

In his petition, Rincones alleges a cause of action against WHM for defamation based on its and DISA's (as its agent) alleged reporting of the results of his positive drug test to third parties, including the Texas Workforce Commission and "others" who are unspecified in the petition.

WHM sought summary judgment on the ground that it made no false statement. *See* TEX. R. CIV. P. 166a(c). WHM also sought summary judgment on the ground that, as Rincones's employer, any statements it made were protected by qualified privilege. *See id.* Rincones does not dispute WHM's assertion of privilege. Furthermore, Rincones does not dispute that the statements WHM made to the Texas Workforce Commission were absolutely privileged. *See Clark v. Jenkins*, 248 S.W.3d 418, 431 (Tex. App.—Amarillo 2008, pet. denied).

Instead, Rincones contends that his summary judgment evidence raised a genuine issue of material fact regarding malice. As a preliminary matter, we note that an absolutely privileged communication is one for which, due to the occasion upon which it was made, no civil remedy exists, even though the communication is false and was made or published with express malice. *Perdue, Brackett, Flores, Utt & Burns v. Linebarger, Goggan, Blair, Sampson, & Meeks, L.L.P.*, 291 S.W.3d 448, 451 (Tex. App.—Fort Worth 2009, no pet.). Therefore, the statement WHM made to the TWC, which was absolutely

privileged, cannot serve as a basis for liability, even if it had been made with actual malice. *See id.*

The only other statements that Rincones has identified as being attributable to WHM are those by its alleged agent DISA, which reported the positive test results. The Court is of the opinion that these statements, if imputed to WHM, are nonetheless subject to qualified privilege because they were made in the course of investigating employee misconduct. *Randall's*, 891 S.W.2d at 646. Furthermore, there is no evidence that WHM or DISA repeated the statements to any third parties after Rincones confronted them, denied use of marijuana, and protested that the results were false. To the extent that Rincones produced evidence that WHM's human resources director harbored serious doubts about the accuracy of the positive test results, which were reinforced by the negative results of the second test, Rincones has not identified any statement that was published by WHM or any of its alleged agents regarding the positive test results after those doubts allegedly arose, except the statement WHM made to the Texas Workforce Commission, which was an absolutely privileged communication. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Thus, we conclude that WHM established its entitlement to judgment as a matter of law on Rincones's defamation claim. Accordingly, the Court overrules Rincones's fourth issue.

## E. Compelled Self-Defamation

In his fifth issue, Rincones contends that the trial court erred in granting summary judgment for WHM on his claim for compelled self-defamation.

28

### 1. Applicable Law

One who communicates defamatory matter directly to the defamed person, who himself communicates it to a third party, has not published the matter to the third person, except in limited circumstances. *First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696, 701 (Tex. App.—Corpus Christi 1980, writ ref'd n.r.e.). If the circumstances indicated that communication to a third party is likely, for instance, a publication may properly be held to have occurred. *Id.* Likewise, if a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third party, the conduct becomes a negligent communication, which amounts to a publication just as effectively as an intentional communication. *Id.*

### 2. Discussion

In his petition, Rincones alleges a claim for defamation against WHM based on compelled self-disclosure of the allegedly defamatory statements regarding the positive drug test to prospective employers and others. WHM sought summary judgment on the grounds that Texas does not recognize such a cause of action and that, even if it did, Rincones could produce no evidence that he was unaware of the alleged defamatory nature of the communication at the time he published it to third parties. *See* TEX. R. CIV. P. 166a(i). Notably, in its motion for summary judgment, WHM did not assert any privilege as Rincones's employer to defeat this claim, as it did with respect to Rincones's defamation claim. *See G & H Towing Co.*, 347 S.W.3d at 297 (holding that summary judgment "may only be granted upon grounds expressly asserted in the summary judgment motion").

In his response, Rincones acknowledged that the Texas Supreme Court has never recognized or rejected a claim for defamation based on self-publication. However, the Texas Supreme Court has stated "the rule that if the publication of which the plaintiff complains was consented to, authorized, invited or procured by the plaintiff, he cannot recover for injuries sustained by reason of the publication." *Lyle v. Waddle*, 188 S.W.2d 770, 772 (Tex. 1945).

This Court, when faced with the question in *Ake*, determined that the rule announced in *Lyle* is inapplicable in certain circumstances in which the defamatory communication was "surely to be brought out" and "would have been a natural inquiry" in an "employment interview or in an application for employment." *Ake*, 606 S.W.2d at 702. Similarly, the Dallas Court of Appeals, in a memorandum opinion, recognized that a plaintiff can recover for injuries sustained by a self-publication he or she was compelled to make. *DeWald v. Home Depot*, No. 05-98-00013-CV, 2000 WL 1207124, at *9 (Tex. App.—Dallas Aug. 25, 2000, no pet.) (mem. op.). The San Antonio Court of Appeals reached a similar conclusion in a case where it held that a prima facie case for damages for defamation had been established by the jury's findings on special issues that an employee's supervisor, as a reasonably prudent person, should have expected that his defamation of the employee to his face would be communicated to others by the employee. *Chasewood Const. Co. v. Rico*, 696 S.W.2d 439, 445 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). Based on the foregoing, the Court concludes that Texas law recognizes a cause of action for defamation based on compelled self-publication in certain limited circumstances in which the rule announced in *Lyle* is inapplicable.

Next, WHM argued that it was entitled to summary judgment because Rincones could produce no evidence that he was unaware of the defamatory nature of the communication at the time he published it to third parties. *See* TEX. R. CIV. P. 166a(i). The San Antonio Court of Appeals has held that a plaintiff may recover for defamation based on self-publication only "if the defamed person's communication of the defamatory statements to the third person was made without an awareness of their defamatory nature." *Gonzales v. Levy Strauss & Co.*, 70 S.W.3d 278, 283 (Tex. App.—San Antonio 2002, no pet.). The Fort Worth Court of Appeals has also reached the same conclusion. *AccuBanc Mortg. Corp. v. Drummonds*, 938 S.W.2d 135, 148 (Tex. App.—Fort Worth 1996, writ denied). So has the Dallas Court of Appeals. *See Austin*, 118 S.W.3d at 499. The Austin Court of Appeals has as well. *Doe v. SmithKline Beecham Corp.*, 855 S.W.2d 248, 259 (Tex. App.—Austin 1993), *aff'd as modified on other grounds*, 903 S.W.2d 347 (Tex. 1995).

In its opinion in *Doe*, the Austin Court of Appeals criticized this Court's opinion in *Ake* for omitting a portion of comment m to Section 577 of the Restatement (Second) of Torts, which this Court cited and relied upon in *Ake*. *Id*. The Austin Court of Appeals quoted the full text of comment m as follows:

> One who communicates defamatory matter directly to the defamed person, who himself communicates it to a third party, has not published the matter to third party if there are no other circumstances. *If the defamed person's transmission of the communication to the third person was made, however, without an awareness of the defamatory nature of the matter and* if the circumstances indicated that communication to a third party is likely, however, a publication may properly be held to have occurred.

*Id*. (quoting RESTATEMENT (SECOND) OF TORTS § 577, cmt. m (1977)). According to the Austin Court of Appeals, the emphasized portion of comment m (omitted in *Ake*) is

31

essential because it constitutes the first hurdle of a two-part test for "self-defamation." *Id.* The Austin Court reasoned that "[u]nless the emphasized portion is considered, the defamed party is under no duty to mitigate its damages by refraining to self-publish known defamatory statements." *Id.*

In criticizing this Court's opinion in *Ake*, the Austin Court of Appeals did not recognize that this Court had actually relied on two different comments to Section 577 of the Restatement (Second) of Torts in formulating a rule for compelled self-defamation. While it is true that this Court cited comment m in part in *Ake*, the opinion also cited and relied upon comment k. Citing comment k, this Court stated in *Ake*, "Likewise, if a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third party, the conduct becomes a negligent communication, which amounts to a publication just as effectively as an intentional communication." *Ake*, 606 S.W.2d at 701 (citing RESTATEMENT (SECOND) OF TORTS § 577, cmt. k (1977)). In *Doe*, the Austin Court of Appeals did not discuss comment k or this Court's reliance on it in *Ake*.

The Texas Supreme Court has observed that "it is a well-settled legal principle that one is liable for republishing the defamatory statement of another." *Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013). From this, it is a small step to impose liability on one who communicates a defamatory statement knowing or reasonably foreseeing that the plaintiff would be compelled to repeat the defamatory statement to others. This is the approach in comment k, which the Court relied upon in *Ake* and which the Austin Court of Appeals did not consider in *Doe*. The approach recognizes that in some circumstances, a defamed individual might be compelled to disclose a statement that he or she knows is

32

defamatory. Under these circumstances, it is unreasonable to require the plaintiff to be ignorant of the statement's defamatory nature. The compelled nature of the disclosure is sufficient to dispel the concern the Austin Court of Appeals expressed in *Doe* about the plaintiff failing to mitigate damages. Furthermore, there is no basis to conclude that a defamed individual would necessarily mitigate damages by refusing to disclose a defamatory statement when its disclosure is being compelled. The opposite might well be true. Therefore, the Court will continue to follow *Ake.* Summary judgment could not be properly granted on this ground. The Court sustains Rincones's fifth issue.

### III. CLAIMS AGAINST EXXON

Rincones asserted claims against Exxon for discrimination based on race or national origin, retaliation, pattern or practice discrimination, defamation, compelled self-defamation, negligence, and tortious interference with a contract. On appeal, Rincones argues that the trial court erred in dismissing these claims.

### A. Discrimination Based on Race or National Origin

In his sixth issue, Rincones argues that the trial court erred by granting Exxon's motion for summary judgment on his claim for discrimination based on race or national origin. Exxon filed two motions for summary judgment on this claim, one a traditional motion and the other a no evidence motion. *See* TEX. R. CIV. P. 166a(c) & (i). Rincones filed a response to the no evidence motion, but he did not file a response to the traditional motion. The trial court granted both motions without stating the basis for its ruling.

### 1. Applicable Law

The Texas Supreme Court has explained as follows:

[S]ummary judgments must stand or fall on their own merits, and the non-movant's failure to except or respond cannot supply by default the grounds

33

for summary judgment or the summary judgment proof necessary to establish the movant's right—the movant's right is not established and the movant must still assert grounds in the motion for summary judgment itself and establish its entitlement to summary judgment.

*McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993). The Texas Supreme Court has also explained as follows:

While it would be prudent and helpful to the trial court for the non-movant always to file an answer or response, the non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient [a]s a matter of law to support summary judgment. The non-movant, however, may not raise any [o]ther issues as grounds for reversal. Under the new rule, the non-movant may not urge on appeal as reason for reversal of the summary judgment any and every [n]ew ground that he can think of, nor can he resurrect grounds that he abandoned at the hearing.

*City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

**2. Discussion**

As noted above, Rincones did not respond to Exxon's traditional motion for summary judgment, which the trial court granted. Therefore, on appeal, he is limited to challenging "the legal sufficiency of the grounds expressly raised by the movant in the motion for summary judgment." *Id.* Rincones argues that summary judgment was improper because it was based on Exxon's erroneous assertion that he could not establish a TCHRA claim unless Exxon was his employer, which Exxon denied being. According to Rincones, he can establish a claim for discrimination under the TCHRA regardless of whether Exxon was his employer.

It is unnecessary for the Court to decide this issue because our review of Exxon's traditional motion for summary judgment reveals that Exxon asserted other grounds for summary judgment. *See* TEX. R. APP. P. 47.1. On appeal, Rincones has not asserted that those other grounds are legally insufficient to support the summary judgment.

34

Instead, Rincones maintains that he produced summary judgment evidence that raised a genuine issue of material fact with respect to the challenged elements of his claim against Exxon for discrimination based on race or national origin. However, Rincones produced the evidence in response to WHM's motion for summary judgment, well after the trial court had granted Exxon's first motion for summary judgment. Again, Rincones did not file a response to Exxon's first motion. Therefore, he could not have raised a genuine issue of material fact precluding summary judgment. *See* TEX. R. CIV. P. 166a(c). Accordingly, the Court overrules Rincones's sixth issue.

## B. Retaliation

In his seventh issue, Rincones contends that the trial court erred in granting summary judgment in favor of Exxon on his retaliation claim. We overrule this issue for the same reasons we overruled Rincones's sixth issue: Rincones failed to file a response to Exxon's traditional motion for summary judgment and therefore could not have raised a genuine issue of material fact precluding summary judgment, as he contends on appeal. In overruling the issue, the Court notes that Rincones has not challenged the legal sufficiency of the grounds for summary judgment with respect to this claim. Accordingly, the Court overrules Rincones's seventh issue.

## C. Pattern or Practice Discrimination

In his eighth issue, Rincones contends that the trial court erred in dismissing for lack of jurisdiction his claim against Exxon for pattern or practice discrimination. We sustain this issue for the same reasons stated in connection with Rincones's third issue in which we held that the trial court has jurisdiction over the pattern or practice claim against WHM. For the same reasons, we conclude that the trial court has jurisdiction

35

over the claim against Exxon.  *See* TEX. R. APP. P. 47.1.  Accordingly, the Court sustains Rincones's eighth issue.

**D. Defamation**

In his ninth issue, Rincones contends that the trial court erred in granting summary judgment in favor of Exxon on his defamation claim.  We overrule this issue for the same reasons we overruled Rincones's sixth and seventh issues:  *See id.*  Rincones failed to file a response to Exxon's traditional motion for summary judgment and therefore could not have raised a genuine issue of material fact precluding summary judgment, as he contends on appeal.  In overruling the issue, the Court notes that Rincones has not challenged the legal sufficiency of the grounds for summary judgment with respect to this claim.  Accordingly, the Court overrules Rincones's ninth issue.

**E. Compelled Self-Defamation**

In his tenth issue, Rincones contends that the trial court erred in granting summary judgment in favor of Exxon on his claim for compelled self-defamation.  Again, as with Rincones's sixth, seventh, and ninth issues, the Court must overrule this issue because Rincones did not file a response to Exxon's traditional motion for summary judgment and has failed to challenge the legal sufficiency of the grounds for the summary judgment on this claim on appeal.  Accordingly, the Court overrules Rincones's tenth issue.

**F. Negligence**

In his eleventh issue, Rincones contends that the trial court erred in granting summary judgment in favor of Exxon on his negligence claim.

## 1. Applicable Law

"Negligence is no more than breach of a legal duty; the tort becomes actionable when the breach causes injury." *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975). "The common law doctrine of negligence consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). "The threshold inquiry in a negligence case is duty." *Id.* "The plaintiff must establish both the existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort." *Id.* "Moreover, the existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Id.*

## 2. Discussion

Exxon filed a combined traditional and no evidence motion for summary judgment on Rincones's negligence claim, asserting four grounds for summary judgment. *See* TEX. R. CIV. P. 166a(c) & (i). First, Exxon argued that Rincones waived any and all claims related to substance abuse testing based on his consent to WHM's Substance Abuse Policy (i.e., release). Second, Exxon asserted that Rincones could produce no evidence that Exxon owed him any duty. Third, Exxon argued that there was no evidence of any breach of any duty. Fourth, Exxon argued that, even if Rincones could establish a negligence claim, it would be barred by the exclusivity provisions of the Texas Workers' Compensation Act.

Rincones filed a response to Exxon's motion with evidence attached. First, Rincones argued that the release that he signed for WHM did not mention or name Exxon

37

or purport to release Exxon from liability. We agree with Rincones on this point. The release did not name or mention Exxon. Therefore, summary judgment was improper on this ground. *See McMillen v. Klingensmith*, 467 S.W.2d 193, 196 (Tex. 1971) ("The rule is a simple one. Unless a party is named in a release, he is not released.").

Second, Rincones argued that Exxon owed him a duty with respect to its drug testing policies and procedures. Rincones argued that Exxon had contractually obligated WHM to implement and enforce its drug and alcohol testing policy using a third party administrator approved by Exxon. According to Rincones, by doing so, Exxon empowered DISA as its agent for purposes of the policy. According to Rincones, as such, Exxon is liable as the principal where WHM, DISA, or DISA's drug and alcohol testing contractors are negligent in performing the test or carrying out the policy. Rincones further argued that because Exxon specifically required WHM, his employer, to use one of a limited number of specific third party administrators to perform drug and alcohol testing (of which DISA was one) and to follow rigid guidelines, Exxon had a duty to ensure that the third party administrator is a proper, valid entity that uses proper protocol and guidelines for testing.

The Texas Supreme Court has explained in relevant part as follows: "In determining whether to impose a duty, this Court must consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the actor." *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994). "[U]nder the law of agency the negligent acts of the agent performed in the course of his agency are imputable to the principal." *Wilkinson v. Stevison*, 514 S.W.2d 895, 898 (Tex. 1974).

38

We conclude that Rincones established that Exxon owed him a duty for purposes of his negligence claim based on evidence of an agency relationship between Exxon, WHM, and DISA with respect to the policies, practices, and procedures for drug and alcohol testing of employees such as Rincones. Rincones produced summary judgment evidence that all three entities were involved in an agency relationship with respect to the creation, enforcement, and implementation of substance abuse policies for employees of WHM, who in turn, worked for the benefit of Exxon at Exxon owned and controlled facilities on terms dictated by Exxon. DISA owed Rincones a duty to use reasonable care in performing the tests, reporting the results, and explaining the return to work policies and procedures. Similarly, Exxon, as the ultimate principal, owed Rincones the same duties. In addition, Exxon owed an independent duty to use reasonable care in creating, enforcing, and implementing the substance abuse policies that it required WHM and DISA to follow with respect to their employees. Accordingly, summary judgment could not be properly granted on this basis.

Third, in his response, Rincones argued that the summary judgment evidence established that DISA did not follow the proper protocol and guidelines, and in fact, mixed up Rincones's urine so that a false result was found that precluded Rincones from working for WHM at Exxon's Baytown, Texas facility. We agree. The summary judgment evidence established that Rincones denied having ever used marijuana. The evidence also established that Rincones took a second test at a different laboratory and the results were negative for the use of drugs or alcohol. We believe this was sufficient to raise a fact issue on the element of breach.

39

In the summary judgment phase, we do not weigh the evidence. *See Gulbenkian v. Penn*, 252 S.W.2d 929, 931 (Tex. 1952) ("The duty of the court hearing the motion for summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits."). We merely view the evidence in the light most favorable to the non-movant to determine whether there is a genuine issue of material fact that would preclude summary judgment. *See id.* The Court concludes that the summary judgment evidence raised a genuine issue of material fact regarding whether DISA followed the correct procedures and protocols with respect to Rincones's drug and alcohol test. There is also a genuine issue of material fact about whether Rincones ever used marijuana. In addition, there is a fact issue about whether DISA breached its duty to use reasonable care in explaining the return to work policies and procedures to Rincones after his test came back positive. Like the duties, these breaches are also imputed to Exxon as the ultimate principal in the parties' contractual, agency relationship. *See Harding Co. v. Sendero Resources, Inc.*, 365 S.W.3d 732, 748 (Tex. App.—Texarkana 2012, no pet.) ("The acts of a corporate agent on behalf of the principal are ordinarily deemed to be the corporation's acts."); *Wheaton Van Lines, Inc. v. Mason*, 925 S.W.2d 722, 731 (Tex. App.—Fort Worth 1996, writ denied) ("Where an agent is acting for the principal, the principal is liable for the agent's acts within the scope of the agency."). Accordingly, summary judgment could not be properly granted on this basis.

Fourth, and finally, Rincones argued in his response that Exxon could not avail itself of the exclusivity provisions of the Texas Workers' Compensation Act because it disclaimed any employment relationship with Rincones. *See* Tex. Labor Code Ann. §

40

408.001(a) (West, Westlaw through 2013 3d C.S.). We agree. Summary judgment could not be properly granted on this basis. Accordingly, the Court sustains Rincones's eleventh issue.

## G. Tortious Interference with a Contract

In his twelfth issue, Rincones contends that the trial court erred in granting summary judgment in favor of Exxon on his claim for tortious interference with a contract.

### 1. Applicable Law

A claim for tortious interference with a contract consists of four elements: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss. *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

### 2. Discussion

In its motion for summary judgment, Exxon argued that it was entitled to judgment as a matter of law on this claim for three reasons. First, Rincones has no evidence of a contract subject to interference. *See* Tex. R. Civ. P. 166a(i). Second, there is no evidence of any allegedly willful or intentional interference by Exxon with any contract. *See id*. Third, Rincones has no evidence of any damages. *See id*.

In his response, Rincones argued that he produced evidence of an at will employment contract that he had with WHM and that the contract was subject to interference. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 688 (Tex. 1989) ("The court of appeals properly held that a cause of action exists for tortious interference with a contract of employment terminable at will."). Rincones also argued that he had produced evidence showing that Exxon had intentionally interfered with the contract by sending a

41

letter to WHM stating that Rincones was ineligible to work at Exxon's Baytown, Texas facility, which was the only work that WHM had available for him. Thus, according to Rincones, he was damaged and suffered a pecuniary loss in that his employment with WHM was effectively terminated and he lost his income. Based on the foregoing, we conclude that Rincones raised a genuine issue of material fact with respect to each of the challenged elements of his claim. Accordingly, summary judgment was improper. The Court sustains Rincones's twelfth issue.

## IV. CLAIMS AGAINST DISA

Rincones asserted claims against DISA for tortious interference with a contract, breach of contract, negligence, and defamation. On appeal, Rincones argues that the trial court erred in granting summary judgment on these claims.

### A. Tortious Interference with a Contract

In his thirteenth issue, Rincones argues that the trial court erred by granting DISA's motion for summary judgment on his claim for tortious interference with a contract. DISA moved for summary judgment based on the two year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West, Westlaw through 2013 3d C.S.); TEX. R. CIV. P. 166a(c). In response, Rincones argued that DISA had an ongoing duty to counsel him regarding the return to work policies and procedures and that every day that DISA breached the duty, a new cause of action arose. Ostensibly in the alternative, Rincones argued that the accrual date of his cause of action was not until he was officially terminated by WHM on September 11, 2008 because that is the point in time when he could no longer return to "active" status with DISA and become eligible for assignment to work for WHM at Exxon's Baytown, Texas facility. Thus, according to Rincones, his cause

of action against DISA for tortious interference with an at will employment contract was timely filed and served within the two year statute of limitations in August of 2010. We agree.

In general, a cause of action accrues and limitations begins to run when "the wrongful act effects an injury." *Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002). For purposes of a claim for tortious interference with an at will employment contract, the injury occurs when the interference causes actual damage or loss by impairing performance of the contract or causing its termination. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989) ("Until terminated, the contract is valid and subsisting, and third persons are not free to tortiously interfere with it."). Thus, Rincones's cause of action against DISA accrued on September 11, 2008 because that is when the alleged interference caused actual damage or loss. Until that point, it was possible that Rincones could have regained an "active" DISA status and become eligible for assignment to work for WHM at Exxon's Baytown, Texas facility. WHM terminated its at will employment contract with Rincones on September 11, 2008, thus causing Rincones to suffer actual damage or loss. Accordingly, we conclude that summary judgment could not be properly granted on this ground. The Court sustains Rincones's thirteenth issue.

## B. Breach of Contract

In his fourteenth issue, Rincones asserts that the trial court erred in granting summary judgment on his claim for breach of contract. DISA did not move for summary judgment on Rincones's breach of contract claim. The trial court's order did not mention or purport to grant summary judgment on the claim. Rincones asserted the claim for the

first time in his fifth amended petition, which was struck by the trial court. Rincones's live petition, his fourth amended petition, did not allege a breach of contract claim. *See Randle v. NCNB Tex. Nat'l Bank*, 812 S.W.2d 381, 384 (Tex. App.—Dallas 1991, no writ) (affirming trial court's use of first amended original petition as live pleading after court struck second amended original pleading).

Notably, Rincones does not assert that the trial court erred in striking his fifth amended petition. Therefore, he has failed to demonstrate that the trial court committed any error involving his purported claim for breach of contract. The Court overrules Rincones's fourteenth issue.

## C. Negligence

In his fifteenth issue, Rincones argues that the trial court erred in granting summary judgment on his negligence claim. DISA moved for summary judgment based on the two year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); TEX. R. CIV. P. 166a(c). In response, Rincones argued that his negligence claim did not accrue until September 2008, when WHM terminated his employment, and that his cause of action against DISA for negligence, which was filed and served in August 2010, was therefore timely and not barred by limitations. To support these assertions, Rincones invoked the continuous tort doctrine and equitable estoppel. He asserted these issues for the first time in his response to DISA's motion for summary judgment, which he filed with supporting evidence attached. On appeal, DISA maintains that it had no duty to negate the continuous tort doctrine or equitable estoppel because they were not pled in Rincones's live petition.

44

When Rincones asserted the continuous tort doctrine and equitable estoppel for the first time in his response to DISA's motion for summary judgment, DISA had two choices: it could object that they had not been pleaded or it could respond on the merits and try the issues by consent. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (regarding unpleaded assertion of discovery rule). The Court has reviewed the record, and it appears that DISA did not object to Rincones's assertion of these unpleaded issues for the first time in his response to DISA's motion for summary judgment. Therefore, the issues were tried by consent. Furthermore, the party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991). Moreover, under our rules, unpleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings. *Id.* Therefore, DISA had the burden of negating the continuous tort doctrine and equitable estoppel to establish its entitlement to judgment as a matter of law based on its limitations defense. There is no dispute that DISA failed to meet this burden. Therefore, summary judgment was improper on this basis. Accordingly, the Court sustains Rincones's fifteenth issue.

## D. Defamation

In his sixteenth issue, Rincones argues that the trial court erred in granting summary judgment in favor of DISA on his defamation claim. DISA moved for summary judgment based on the one year statute of limitations. DISA established that the cause of action accrued on April 14, 2008, when the allegedly defamatory statement was published to WHM regarding Rincones's alleged use of marijuana and the results of his

45

drug and alcohol test. *See Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 323 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("A defamation cause of action ordinarily accrues on the date the defamatory matter is published or circulated."). DISA also established that Rincones's defamation claim has a one year statute of limitations that expired on April 14, 2009. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a) (West, Westlaw through 2013 3d C.S.).

In response, Rincones asserted the continuing tort doctrine and argued that his cause of action accrued in September 2008 (when his employment was allegedly terminated). Even if that were true with respect to Rincones's defamation claim, however, the claim would still be barred because the one year limitations period would have expired in September 2009, well before he filed his third amended petition in February 2010 and his fourth amended petition in August 2010.

Rincones also argued that equitable estoppel barred DISA's statute of limitations defense; however, Rincones did not make this argument with respect to his defamation claim. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Accordingly, we conclude that DISA established its entitlement to judgment as a matter of law on the defamation claim based on its affirmative defense of limitations. The Court overrules Rincones's sixteenth issue.

**V. CONCLUSION**

The Court reverses the trial court's judgment in part, *see* TEX. R. APP. P. 43.2(d), because it was reversible error to dismiss Rincones's claims against (1) WHM for discrimination based on race or national origin, retaliation, pattern or practice

46

discrimination, and compelled self-defamation; (2) Exxon for tortious interference with a contract, pattern and practice discrimination, and negligence; and (3) DISA for tortious interference with a contract and negligence. We remand the cause to the trial court for further proceedings consistent with this opinion. *See id.* We affirm the remainder of the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
12th day of February, 2015.