

**NUMBER 13-14-00566-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**PENSION ADVISORY GROUP, INC.**
**AND PAUL D. HINSON,**                                      **Appellants,**

**v.**

**FIDELITY SECURITY LIFE INSURANCE CO.,**          **Appellee.**

---

**On appeal from the 343rd District Court**
**of Aransas County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Chief Justice Valdez**

Appellants, Pension Advisory Group, Inc. and Paul D. Hinson (collectively "Hinson"), appeal from the trial court's summary judgment in favor of appellee, Fidelity Security Life Insurance ("Fidelity"). By eight issues, Hinson contends that (1) Fidelity failed to prove entitlement to summary judgment on Hinson's claims for business disparagement, tortious-interference with an existing contract, tortious-interference with prospective

business relationships, defamation, conspiracy, and breach of fiduciary duty (issues 1–6); (2) Fidelity failed to prove entitlement to exclusion of Hinson's expert witnesses (issue 7); and (3) "Because [Fidelity] waived their evidentiary complaints by offering the same or similar evidence into evidence, other [Hinson] summary judgment evidence should not have been struck" (issue 8). We affirm in part and reverse and remand in part.

## I. BACKGROUND

After consulting Frank Renfro, the trustee of a defined benefit pension plan for Star Consultants, Inc., Hinson, the plan's general agent, suggested that the plan be converted to an annuity as a "412(e)(3) plan." Hinson then contacted George Evanson from CJA & Associates, Inc. ("CJA") to find the best annuity plan. Renfro purchased an annuity from Fidelity, and Hinson and CJA received commissions for the sale.

Subsequently, Renfro requested that his attorney, Deborah Welch, evaluate his personal estate plan, which included the Fidelity annuity. According to Fidelity, at some point after becoming aware of this evaluation, Hinson requested that Renfro sign a commission disclosure notice concerning the annuity. Fidelity asserts that "Hinson claimed that he had a copy of the notice with Renfro's signature"; however, Renfro and Welch denied that the signature was authentic. Renfro requested a refund of his money because he claimed he was not aware that a commission had been paid to Hinson.

Subsequently, Fidelity representatives decided to refund the money to Renfro, and according to Hinson, they did not call him or CJA to discuss Renfro's complaint. Pursuant to its contract, Fidelity terminated the annuity and exercised its right to recover commissions from CJA and Hinson in the amount of $337,000. According to Hinson, Fidelity's employee, David Smith, then informed CJA's employee, Ray Ankner, that Fidelity

2

had cancelled Renfro's annuity due to a complaint made by Renfro concerning the commission disclosure notice and that Fidelity was seeking reimbursement of the commission. Hinson further claims that Fidelity's general counsel e-mailed CJA's general counsel informing him that Fidelity was cancelling Renfro's annuity plan "because Hinson did not disclose the commissions [to Renfro] and did not get proper documentation for the Plan." Hinson states, "Later, [Fidelity's general counsel] specifically accused Hinson of forging the [commission] Disclosure Notice." According to Hinson, the CJA requested an investigation and strongly disagreed that Hinson had forged Renfro's signature.

Hinson sued Fidelity, among others, for business disparagement, defamation under both libel and slander, tortious interference with contracts, conspiracy, breach of fiduciary duty, fraud, breach of contract, and tortious interference with prospective contracts. Fidelity filed motions for no-evidence and traditional summary judgment. The trial court granted both motions. The trial court also granted Fidelity's motion to strike Hinson's summary judgment evidence, which included the depositions of James Ferguson and Stuart J. Wright. This appeal followed.[1]

## II.    EXCLUSION OF HINSON'S EXPERT WITNESSES

In response to Fidelity's motions for summary judgment, Hinson offered the deposition testimony of Ferguson and Wright. However, Fidelity objected to their testimony regarding damages and malice on the basis that the testimony was conclusory, speculative, not based on specialized knowledge or a reliable foundation, and not based on any methodology. The trial court granted Fidelity's motion to strike Hinson's summary

---

[1] Hinson has not challenged the summary judgment on his breach of contract claim.

3

judgment evidence. By his seventh issue, Hinson argues that the trial court improperly granted Fidelity's motion to strike Ferguson's and Wright's deposition testimony.

On appeal, Hinson argues that Ferguson's and Wright's depositions support his claim of damages. However, Hinson has not cited the appellate record in his brief to support any of his contentions. *See* TEX. R. APP. P. 38.1(f), (h). Instead, Hinson has cited his voluminous appendix to support his appellate claims. Citing the appendix is not a substitute for citing the record. *Omohundro v. Ramirez–Justus*, 392 S.W.3d 218, 221 (Tex. App.—El Paso 2012, pet. denied) (citing *Jackson v. Citibank (S. D.), N.A.*, 345 S.W.3d 214, 214 (Tex. App.—Dallas 2011, no pet.) (explaining that citing only the brief's appendix does not comply with the rules of appellate procedure, which require citation to the record on appeal)). And, this Court is not required to search the record for the facts supporting a party's position. *Id.* Thus, error, if any, may be waived. *See id.* However, to the extent we have been able to determine items in the clerk's record upon which Hinson relies, we have done so. *See id.* But, as this is a voluminous record, to the extent we have been unable to determine which documents in the clerk's record upon which Hinson relies, we conclude he has waived error, if any. *See id.* To the extent we may have reviewed documents or evidence that Hinson amended or that he has not meant to cite, we conclude he has waived error, if any, by failing to cite the Clerk's record in his brief. *See id.* Within these parameters, we will address Hinson's issues.

In the context of lost profits, the party offering expert testimony must show that the underlying data supporting the expert's opinion is reliable and based on an acceptable methodology. *See DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 191 (Tex. App.—Fort Worth 2012, no pet.). "The amount of the loss must be proven by

4

competent evidence with 'reasonable certainty' by whatever method is chosen, but the rule regarding such proof is intended to be 'flexible enough to accommodate the myriad circumstances in which claims for lost profits arise.'" *Id.* (citing and quoting *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994)). An expert's opinion regarding lost profits must at the least "be based upon objective facts, figures, or data from which the amount of lost profits may be ascertained." *Id.* The expert must connect the data relied upon to his opinion and "show how that data is valid support for the opinion reached." *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 642 (Tex. 2009). We review the admissibility of evidence under an abuse of discretion standard. *Id.* at 638; *Ordonez v. Solorio*, 480 S.W.3d 56, 67–68 (Tex. App.—El Paso 2015, no pet.).

As to damages, Ferguson stated, at his deposition, that he would no longer send any of his clients to Hinson because of the forgery allegations. Ferguson testified that Hinson suffered actual damages in the amount of $800,000 to $1.2 million in new business over the next several years. Ferguson based his calculations of actual damages on the fact that he would no longer send clients to Hinson. However, when asked if he had conducted any analysis to support his opinion, Ferguson responded, "No." When asked how much business he had sent Hinson in the past year, Ferguson stated that he had not been in business the prior year, but that from around 2003 until 2013, he had sent Hinson business of "about $400,000" per year. The following exchange then occurred:

> [Fidelity]: And so when you testified about the damages that Mr. Hinson is going to suffer, you haven't done any actual analysis of damages, have you, sir?
>
> A. No.
>
> Q. You're just speculating on what damages you might give him in the future?

A.          Yes.

Given Ferguson's admission that he relied on no data, performed no analysis of any data, had speculated about the damages, and that there is no evidence that Ferguson based his opinion on any accepted methodology, we cannot conclude that the trial court abused its discretion by granting Fidelity's motion to strike Ferguson's deposition regarding his opinion of damages. *See Whirlpool Corp.*, 298 S.W.3d at 638; *Ordonez*, 480 S.W.3d at 67–68. We overrule Hinson's seventh issue to the extent he complains that the trial court improperly excluded Ferguson's testimony on damages.[2]

Wright testified, at his deposition, that he could not identify any specific business that Hinson had lost as a result of any issue in this lawsuit and that he had no knowledge of Hinson's business. When asked if he had "any opinions as to the amount of any damages [Hinson] suffered" and "You can't identify a single piece of business that he's lost as a result of any issue in this lawsuit," he responded, "No." Wright stated that in his opinion Hinson would not be successful in launching a product that he had developed due to the allegations made against him. However, Wright later acknowledged that he had no idea whether Hinson's product would be successful. Wright claimed that he would no longer send any business to Hinson, but he admitted that he had no business to refer to Hinson and could not identify any clients who he would not refer to Hinson.

---

[2] Regarding the element of malice, Ferguson testified that he had no knowledge of Fidelity's state of mind and that he did not know whether Fidelity acted with malice or not. Thus, we conclude the trial court did not abuse its discretion by striking that evidence. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 642 (Tex. 2009); *Ordonez v. Solorio*, 480 S.W.3d 56, 67–68 (Tex. App.—El Paso 2015, no pet.). We overrule Hinson's seventh issue to the extent he argues that the trial court abused its discretion by striking Ferguson's testimony regarding malice.

Given that Wright admitted that he had no knowledge of Hinson's business and could not identify any actual damages Hinson has suffered, we cannot conclude that the trial court abused its discretion by granting Fidelity's motion to strike Wright's testimony. *See Whirlpool Corp.*, 298 S.W.3d at 638; *Ordonez*, 480 S.W.3d at 67–68. We overrule Hinson's seventh issue to the extent he argues that the trial court erred in excluding Wright's testimony on damages.

### III.  NO-EVIDENCE SUMMARY JUDGMENT

By his first and second issues, Hinson challenges the no-evidence summary judgment. Fidelity argued in its motion for no-evidence summary judgment that there was no evidence of, among other things, malice or damages for Hinson's claim of business disparagement. As to Hinson's tortious interference with existing contracts claim, Fidelity argued that there is no evidence of a valid contract subject to interference. Thus, the burden shifted to Hinson to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact regarding those elements.

### A.  Standard of Review

A party may move for summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Inds., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Once the motion is filed, the burden shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, summary judgment is improper. *King Ranch, Inc. v. Chapman*, 118

7

S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," while less than a scintilla exists when the evidence is "so weak as to do no more than create mere surmise or suspicion." *Id.*; *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.). "When reviewing a no-evidence summary judgment, we 'review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.'" *Timpte Inds., Inc.*, 286 S.W.3d at 310.

## B. Business Disparagement

By his first issue, Hinson argues that a question of fact exists regarding the element of malice in his business disparagement claim. In its motion for no-evidence summary judgment, Fidelity claimed that there was no evidence of malice to support Hinson's claim of business disparagement. Hinson responded that "[h]ere the defamatory statement— that Hinson forged Renfro's name" along with other factors, "is more than a scintilla of evidence of actual malice, ill will, or intent to interfere in [his] economic interest in an unprivileged fashion." Hinson relied on a definition of malice requiring a showing that Fidelity acted either with actual malice, ill will, or an intent to interfere in his business, and he argued that the statement itself was evidence of malice. Hinson identified "other factors" as how the statement itself was evidence of malice ill will, or an intent to interfere in his business.

As this Court has previously explained, actual malice in a business disparagement claim requires proof that the defendant "made a statement 'with knowledge that it was

8

false or with reckless disregard of whether it was true or not.'" *Tex. Campaign for the Env't v. Partners Dewatering Int'l, LLC*, 485 S.W.3d 184, 201 (Tex. App.—Corpus Christi 2016, not pet.). To establish a reckless disregard, the party must present some evidence that the defendant entertained serious doubts as to the truth of the statements made. *Id.* Thus the focus of an actual malice determination is on the defendant's state of mind at the time of the publication. *Id.* "'An error in judgment is not enough' to establish reckless disregard." *Id.* (quoting *Casso v. Brand*, 776 S.W.2d 551, 563 (Tex. 1989)). "Mere negligence is not enough." *Id.* (quoting *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171–72 (Tex. 2003)).

Here, the trial court struck Ferguson's deposition testimony regarding malice, and Hinson provided no other evidence in response to Fidelity's no-evidence motion for summary judgment that it made the complained-of statement with malice. *See Tex. Campaign for the Env't*, 485 S.W.3d at 201. Thus, reviewing the evidence in the light most favorable to Hinson, crediting evidence favorable to him, if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, Hinson failed to provide more than a scintilla of probative evidence to raise a genuine issue of material fact regarding malice. *See King Ranch, Inc.*, 118 S.W.3d at 751; *Timpte Inds., Inc.*, 286 S.W.3d at 310. Accordingly, we cannot conclude that the trial court improperly granted summary judgment in favor of Fidelity regarding Hinson's business disparagement claim. We overrule Hinson's first issue.

## C.     Tortious Interference with Existing Contracts

By his second issue, Hinson argues that there is more than a scintilla of evidence that Hinson was a party to contracts that were subject to interference. In its motion for no-

evidence summary judgment, Fidelity argued that although Hinson claimed he had valid contracts with various entities and individuals that formed the basis of his tortious interference claim, there was no evidence that Hinson had valid contracts with these entities and individuals. Hinson responded "[t]here is evidence of pension administration contracts for Betty Samota and Mack Dick as well as for contracts for an automatic increase in the life insurance contract to five million dollars upon the death of the other for Ms. Samota and Mr. Dick. There is also evidence of contracts for The Ranch Gang, Athletic Solutions, Star Consultants, and Rio Petroleum." Finally, Hinson argued that Fidelity conceded that Hinson had a contract with CJA, which could have been the basis of Hinson's tortious interference claim.

In its order granting summary judgment, the trial court stated it granted Fidelity's motion to strike Hinson's summary judgment evidence. Hinson's argument that he provided evidence of valid contracts with the above-named individuals and entities depends on whether the trial court abused its discretion in striking Hinson's summary judgment evidence. If the trial court properly granted Fidelity's motion to strike, then Hinson could not have met his burden of providing more than a scintilla of evidence to support his claim of existing valid contracts, and we must affirm the trial court's granting of Fidelity's no-evidence summary judgment.

Hinson argues that the trial court abused its discretion by striking his summary judgment evidence because Fidelity offered the same or similar evidence to support its motion for summary judgment. However, again, Hinson's citation to his appendix does not assist us in making this determination because as previously stated, citing the appendix does not substitute for citing the record. *See Omohundro*, 392 S.W.3d at 221.

10

We are not required to search the record for the facts supporting a party's position. *Id.* Thus, we conclude that error, if any, was waived.[3]  *See id.*  We conclude that Hinson has not shown that the trial court's no-evidence summary judgment on his tortious interference with existing contracts is improper.  *See id.*  We overrule Hinson's second issue.

## IV.  TRADITIONAL SUMMARY JUDGMENT

We review the granting of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.).  All evidence favorable to the non-movant is taken as true, "and we indulge every reasonable inference and resolve any doubts in the non[-]movant's favor."  *Valence Operating Co.*, 164 S.W.3d at 661.

In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.  *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing TEX. R. CIV. P. 166a(c)); *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).  A defendant seeking a traditional motion for summary judgment must either conclusively disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of any affirmative defense.

---

[3] By his eighth issue, Hinson challenges the trial court's exclusion of some of his summary judgment evidence on the basis that Fidelity relied on the same or similar evidence to support its motions for summary judgment.  Hinson provides a chart in his brief with multiple citations to his appendix, which include many documents that may or may not be in this voluminous clerk's record that he is asking us to compare with other documents that may or may not be located in this voluminous clerk's record.  We decline to make an independent review of this voluminous clerk's record in order to find the documents to determine whether Fidelity relied on the same or similar evidence that the trial court struck.  We overrule Hinson's eighth issue.

*Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Sanchez v. Matagorda County*, 124 S.W.3d 350, 352 (Tex. App.—Corpus Christi 2003, no pet.).

**A.      Tortious Interference with Prospective Business Relationships**

By his third issue, Hinson contends that Fidelity failed to meet its traditional summary judgment burden on his cause of action for tortious interference with prospective business relationships.

> To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that (1) a reasonable probability existed that the plaintiff would have entered into a business relationship with a third party; (2) the defendant['s acts were intentional, i.e., the defendant] either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 535 (Tex. App.—Corpus Christi 2015, no pet.) (citing *Schimmel v. McGregor*, 438 S.W.3d 847, 860 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)); *see Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001) (explaining that under the Restatement (Second) of Torts § 766B cmt. d, tortious interference with prospective relations requires that the party's acts be intentional, which requires evidence showing either that "the actor desire[d] to bring [the interference] about or [that] he [knew] that the interference [was] certain or substantially certain to occur as a result" of his conduct); *see also Olabarrieta v. Compass Bank, N.A.*, No. 13-11-00748-CV, 2013 WL 7864080, at *2 (Tex. App.—Corpus Christi Aug. 1, 2013, no pet.) (mem. op.) ("Interference is tortious only if it is intentional, and the intent required is the intent to interfere, not just an intent to do the particular acts done.").

In its motion for traditional summary judgment, Fidelity set out the above-stated elements of tortious interference with prospective relations. *See Id.* In its motion, Fidelity argued it was entitled to summary judgment because (1) Fidelity cannot tortiously interfere with its own prospective contracts and (2) there was no evidence that it intended to interfere with any of Hinson's prospective business relationships.

The Texas Supreme Court has explained that when a party files a traditional motion for summary judgment, the rules do not prevent that party from also moving for summary judgment on a no-evidence basis. *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004); *see also Hearn v. Snapka*, No. 13-11-00332-CV, 2012 WL 7283791, at *9 (Tex. App.—Corpus Christi Dec. 28, 2012, pet. denied) (mem. op.) (concluding that the movant's "motion— though captioned a no-evidence motion for summary judgment—was actually a hybrid-motion containing both no-evidence and traditional grounds for summary judgment" and affirming the summary judgment because on appeal, the appellant failed to challenge the traditional grounds supporting the trial court's granting summary judgment); *Garcia v. City of Elsa*, No. 13-10-00440-CV, 2012 WL 1484105, at *4 (Tex. App.—Corpus Christi Apr. 26, 2012, no pet.) (mem. op.) (noting that the supreme court does not require litigants to file separate motions for summary judgment pursuant to Texas Rule of Civil Procedure 166a(i) and 166a(c)). If a movant states in its traditional motion for summary judgment that there is no evidence of one or more of the elements of the cause of action, it is sufficient to invoke rule 166a(i), and we may not disregard it. *Binur*, 135 S.W.3d at 651 (explaining that the movant stated in its traditional motion for summary judgment "that there was no evidence of proximate cause" and holding that the lower court of appeals

"erred in concluding that this ground could be disregarded because evidence was attached to the motion"); *see also Hearn*, 2012 WL 7283791, at *9.

Thus, in this case, although Fidelity captioned its motion as requesting summary judgment under traditional grounds, we may not disregard Fidelity's assertion that there was no evidence that it intended to interfere with any of Hinson's prospective contracts or business relationships. Accordingly, we conclude that Fidelity's motion captioned traditional motion for summary judgment was actually a hybrid motion containing both no-evidence and traditional grounds for summary judgment. *See Binur*, 135 S.W.3d at 650; *see also Hearn*, 2012 WL 7283791, at *9. Generally, when a movant files a hybrid motion on both no-evidence and traditional grounds, we review the trial court's judgment under the no-evidence standard of review first. *Salazar v. Ramos*, 361 S.W.3d 739, 745 (Tex. App.—El Paso 2012, pet. denied); *see also Hearn*, 2012 WL 7283791, at *10.

On appeal, as we understand it, Hinson argues that there is more than an scintilla of evidence that Fidelity intended to interfere with his prospective business relationships because we can conclude from the statement itself that Fidelity had an awareness of the statement's harmful potential, the accusation was improbable, and there was a lack of urgency to make the defamatory statement. Hinson also states that the statement itself shows that (1) Fidelity relied on one source, Renfro, who was biased, (2) there is "a lack of proof of the source's trustworthiness," (3) Fidelity "lacks expertise in the statement's subject matter (forgery)," and (4) Fidelity's "care exercised, extreme departure from professional standards," ignored contrary evidence, avoided key witnesses, and refused "to consider other possibilities, particularly when presented with another possibility." However, in his response to Fidelity's hybrid motion for summary judgment, Hinson made

none of the above arguments. In his response, Hinson did not address Fidelity's claim that there is no evidence that it intended to interfere with Hinson's prospective business relationships. *See* TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc.*, 206 S.W.3d 582. Therefore, Hinson did not meet his burden to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact, and the summary judgment was not improper on these grounds. *See King Ranch, Inc.*, 118 S.W.3d at 751. We overrule Hinson's third issue.

**B.    Defamation**

By his fourth issue, Hinson contends that Fidelity did not meet its summary judgment burden of showing as a matter of law that no genuine issue of material fact existed on his defamation claim.

In its traditional motion for summary judgment, Fidelity stated, without more, that Hinson could not prevail because his evidence on damages was speculative and "any lost income from referrals or the product developed by Hinson is necessarily speculative and based on conjecture." However, as the movant in a motion for traditional summary judgment, the burden was not on Hinson to provide non-speculative evidence of damages.[4] In a motion for traditional summary judgment the burden was on Fidelity to establish as a matter of law that no genuine issue of material fact existed on an element of Hinson's defamation claim or to establish all of the elements of an applicable defense. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215; *City of Hous.*, 589 S.W.2d at 678. Thus,

---

[4] Fidelity did not state in their motion for summary judgment that there is no evidence of damages. Instead, Fidelity merely challenged the quality of Hinson's evidence.

15

because Fidelity did not meet its burden, the trial court could not have properly granted Fidelity's traditional summary judgment on that basis. *See id.*

Fidelity also argued that Hinson could not prove damages for defamation because the "alleged statements of [Martha] Madden and Smith[, (both of whom were Fidelity employees)], which [Fidelity] have shown did not occur as alleged, were not published outside of CJA, and CJA continues to do business with [Hinson]," and "Ankner, the CEO of CJA, has testified that he does not believe that Hinson forged Renfro's signature." As we understand Fidelity's traditional motion for summary judgment, it challenged only the element of damages on Hinson's defamation claim.[5] In addition, the argument relied upon by Fidelity depends on proof that Madden and Smith did not publish the alleged defamation to anyone not employed by CJA. Thus, we focus our analysis on whether Fidelity established this fact as a matter of law.[6]

In his live pleading, Hinson claimed that Fidelity published the alleged false statements by written letter, e-mail, and phone conversations to employees of CJA, Louis Meers, Renfro's accountant, Welch and others in the Amarillo area. However, Fidelity cited no evidence in its motion supporting its claim that Madden and Smith did not publish the alleged defamatory statements outside of CJA—that is Fidelity did not provide any evidence that Madden and Smith did not make the alleged defamatory statements to

---

[5] "Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Although Fidelity generally mentioned these elements in in its motion for summary judgment, it did not provide any discussion regarding why it met its burden of establishing no issue of genuine fact existed as to any element other than damages. *See* TEX. R. CIV. P. 166a(c) (requiring that movant specifically challenge elements of the non-movant's cause of action).

[6] We note, however, that we are assuming without deciding that if Fidelity had established such a fact, it would have prevailed on summary judgment.

16

Meers and Welch. In addition, Fidelity did not address whether it published the alleged defamatory statements to others in the Amarillo area as alleged by Hinson. Thus, we agree with Hinson that Fidelity did not meet its burden of establishing that there is no issue of genuine fact regarding whether Hinson suffered damages due to the alleged defamation because Fidelity did not establish as a matter of law that Madden and Smith only made statements to CJA employees as alleged in its motion for traditional summary judgment.[7] *See* TEX. R. CIV. P. 166a. Accordingly, we conclude that the burden did not shift to Hinson, and summary judgment on his claim of defamation was improper. We sustain Hinson's fourth issue.

## C. Conspiracy

By his fifth issue, Hinson contends that Fidelity failed to properly challenge that "there were less than two entities," the entities "shared the common objective of publishing the statement that Hinson forged Renfro's signature, effectuating the Release between those parties," there was a "meeting of the minds," and there is an underlying tort.

The elements of the tort of civil conspiracy are as follows: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of

---

[7] Hinson claims that he could have prevailed on his defamation claim based on republication of the alleged defamation. *See First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696, 701 (Tex. App.—Corpus Christi 1980, writ ref'd) ("Likewise, if a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third party, the conduct becomes a negligent communication, which amounts to a publication just as effectively as an intentional communication."); *see also Rincones v. WHM Custom Servs.*, Inc., 457 S.W.3d 221, 246 (Tex. App.—Corpus Christi 2015, pet. granted) ("This Court, when faced with the question in *Ake*, determined that the rule announced in *Lyle* is inapplicable in certain circumstances in which the defamatory communication was 'surely to be brought out' and 'would have been a natural inquiry' in an 'employment interview or in an application for employment.'"); *DeWald v. Home Depot*, No. 05-98-00013-CV, 2000 WL 1207124, at *9 (Tex. App.—Dallas Aug. 25, 2000, no pet.) (agreeing with and approving the reasoning in *Ake* and stating, "If an employer gives untrue defamatory reasons for terminating an employee, it should recognize that such conduct creates an unreasonable risk that the defamatory matter will be communicated to prospective employers."). However, it does not appear that Hinson alleged any facts in his live pleading supporting such a theory. Nonetheless, such a determination is not dispositive to our decision. *See* TEX. R. APP. P. 47.1.

17

action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Backes v. Misko*, 486 S.W.3d 7, 27 (Tex. App.—Dallas 2015, pet. denied). "A defendant's liability for conspiracy depends on 'participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.'" *Id.*

In its motion for traditional summary judgment, Fidelity did not specifically challenge all of the elements of conspiracy. Instead, Fidelity specifically argued that no underlying tort could be proven and that because Smith was an employee of Fidelity, it and he could not have conspired with each other unless Smith was acting in his personal capacity. However, Fidelity neither cited nor provided any evidence that Smith had been acting in his corporate capacity. Again, as the movant of a traditional motion for summary judgment, the burden lay with Fidelity to establish its entitlement to summary judgment. *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *City of Hous.*, 589 S.W.2d at 678. Accordingly, the trial court could not have granted traditional summary judgment on the basis that Smith was acting in his corporate capacity when he allegedly made the defamatory statements because Fidelity did not meet its summary judgment burden.[8]

Regarding whether there was an underlying tort, Fidelity argued, "[a]s discussed above, [Hinson has] failed to identify any representations made by [Fidelity] or Smith, or the reliance on any representation made by any of the parties at issue, both fatal flaws to any claim of fraud." Again, as the movant, Fidelity had the burden of establishing as a matter of law that no issue of material fact existed regarding the underlying tort. Here,

---

[8] In his pleadings, Hinson alleged that Smith told Ankner that Fidelity was cancelling Renfro's annuity "due to forgery of the Disclosure notice." Hinson also alleged that he "received word from CJA that [Smith, Fidelity, and Renfro] were telling people that Hinson had forged Renfro's signature on the Disclosure Notice." Pleading in the alternative, Hinson stated that Smith, among others, had "implied that Hinson forged Renfro's signature or that was at the least the gist of [Fidelity's and Smith's] statements."

18

Fidelity surmised that the underlying tort alleged by Hinson was fraud and attempted to challenge the reliance element of fraud by shifting the burden to Hinson. However, in a traditional motion for summary judgment, the burden does not shift until the movant has conclusively negated an element of the non-movant's claim. *See Castillo v. Westwood Furniture, Inc.*, 25 S.W.3d 858, 863 (Tex. App.—Houston [14th] Dist. 2000, no pet.) ("Westwood did not attach any additional summary judgment evidence that conclusively negated the element of actual or constructive knowledge. . . . [therefore,] the burden never shifted to [the non-movant] to present evidence to create a fact issue."). Here, without citation to any evidence, Fidelity failed to conclusively negate at least one element of Hinson's conspiracy claim; thus, the burden never shifted to Hinson to present evidence creating a fact issue. *See id.* Accordingly, we conclude that Fidelity was not entitled to summary judgment as a matter of law on Hinson's conspiracy claim. We sustain Hinson's fifth issue. *See id.*

**D.    Breach of Fiduciary Duty**

Regarding breach of fiduciary duty, by his sixth issue, Hinson argues as follows:

> [Fidelity] negotiated a settlement affecting [Hinson's] rights, purported to make [Hinson] a "party" to the Release, and acted as an intermediary between Hinson and his initial, purported accuser Renfro. Having purported to so act on [Hinson's] behalf, [Fidelity] owed [Hinson] a fiduciary duty. Per the discussion of [Hinson's] other causes of action involving intentional wrongs, [Fidelity] breached that duty.

We conclude that Hinson had not adequately briefed this issue as he has not cited appropriate authority or the record in support of his above-stated assertions. *See* TEX. R. APP. P. 38.(h), (i). We overrule Hinson's sixth issue.

**E.    Summary**

19

We conclude that summary judgment was improper on Hinson's claims of defamation and conspiracy because Fidelity did not conclusively negate at least one element of those claims in its traditional motion for summary judgment. We conclude that the trial court's summary judgment was proper in all other respects.

## V. CONCLUSION

We reverse the summary judgment as to Hinson's defamation and conspiracy claims and remand to the trial court for proceedings consistent with this opinion. The judgment is affirmed in all other respects.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
30th day of September, 2016.